Michael Jason Lee, Esq. (State Bar No. 206110)
**LAW OFFICES OF MICHAEL JASON LEE, APLC**
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
Telephone: (858) 550-9984
Facsimile: (858) 550-9985
Email: michael@mjllaw.com

Christopher J. Beal, Esq. (State Bar No. 216579)
**DILLON MILLER AHUJA & BOSS, LLP**
5872 Owens Avenue, Suite 200
Carlsbad, California 92008
Telephone: (858) 587-1800
Facsimile: (858) 587-2587
Email: cbeal@dmablaw.com

Attorneys for Applicant,
2770095 Ontario, Inc.

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Application of* | Case No.: |
| 2770095 Ontario, Inc. | **APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Applicant, | |
| For the Issuance of a Subpoena for the Taking of a Deposition and the Production of Documents for use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 | |

i

**TABLE OF CONTENTS**

TABLE OF CONTENTS ……………………………………………………………….. ii

TABLE OF AUTHORITIES …………………………………………………………... iii

Application to Conduct Discovery………………………………………………….... 1

Memorandum of Points and Authorities ……………………………………………… 1

I.     INTRODUCTION …………………………………………………………… 1

II.    STATEMENT OF FACTS …………………………………………………… 2

    A.   277 Ontario ………………………………………………………… 2

    B.   Overview of Affinitas' Business …………………………………… 2

    C.   Affinitas Engages New Line Processing, Zed Payments and Maxwell Morgan as Payment Processors. ………………………………………… 4

    D.   Issues with Missing and Outstanding Transactions ……………………..... 5

    E.   Morgan's Claims of "Banking Issues" ……………………………… 6

    F.   251 Ontario and 241 Ontario ………………………………………... 8

    G.   Discovery Regarding TD Bank ……………………………………..... 9

    H.   Additional Investigations …………………………………………..... 9

    I.   Connection to Respondents ………………………………………… 10

    J.   Current Foreign Proceeding and Additional Connections to Respondents……. 11

III.   THE CONTEMPLATED DISCOVERY ……………………………………… 12

IV.    277 ONTARIO'S LOCATION ……………………………………………… 13

V.     THE APPLICATION SATISFIES SECTION 1782'S REQUIREMENTS ………….. 13

    A.   Application is an "Interested Person" ……………………………… 14

    B.   The Requested Discovery Is for Use in Conjunction with Proceedings Before a Foreign Tribunal ……………………………………………… 14

    C.   Jaspreet Mathur Resides in and Can Be Found in the Central District of California ……………………………………………………… 14

    D.   Emblaze One Inc. Operates in and Can Be Found in the Central District of California …………………………………………………..... 15

    E.   Discretionary Considerations Merit Granting This Application ……………. 15

VI.    CONCLUSION ……………………………………………………………… 17

# TABLE OF AUTHORITIES

**Cases**

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
  793 F.3d 1108 (9th Cir. 2015) ...........................................................................13

*Brandi-Dohorn v. IKB Deutsch Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ................................................................................17

*In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*,
  Case No. Ml 9-88, 2006 WL 3844464 (S.D.N.Y.  Dec. 29, 2006) ......................16

*In re Application of Grupo Qummam*, No. M 8-85 (DC),
  2005 WL 937486 (S.D.N.Y. Apr. 22, 2005) .......................................................16

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998) ...............................................................................14

*In re Euromepa S.A.*,
  51 F.3d 1095 (2d Cir. 1995) ...............................................................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004).....................................................................................passim

*John Deere Ltd. v. Sperry Corp.*,
  754 F.2d 132 (3d Cir. 1985) ...............................................................................14

*Republic of Kazakstan v. Biedermann Int'l*,
  168 F.3d 880 (5th Cir. 1999) ..............................................................................14

**Statutes**

§1782(a) ..................................................................................................................16

1782 .......................................................................................................................14

28 U.S.C. § 1782 ...............................................................................................passim

28 U.S.C. §1782 .....................................................................................................17

iii

2770095 Ontario, Inc. ("Applicant") by and through its undersigned counsel, the Law Offices of Michael Jason Lee, APLC, hereby brings the instant Application for the Issuance of a Subpoena for the Taking of a Deposition and Production of Documents for use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 ("Application") for the entry of an order from this Court allowing Applicant to take obtain documents from and take the deposition testimony of Jaspreet "Jas" Mathur and Emblaze One Inc..  This Application is supported by the Declaration of Martin Audiffred, Norman Groot and Michael Jason Lee.[1]  Applicant respectfully requests that this Application is granted in its entirety.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Applicant 2770095 Ontario, Inc. ("277 Ontario" or "Applicant") respectfully requests that the Court grant the instant application for the issuance of a subpoena for the taking of a deposition and the production of documents for use in a foreign proceeding under 28 U.S.C. § 1782.  Specifically, 277 Ontario seeks an order allowing it to obtain documents and deposition testimony from Jaspreet "Jas" Mathur and his company Emblaze One Inc. (together, "Respondents") because Respondents possess information and documents related to $1,110,476.75 that was fraudulently stolen and is presently owed to 277 Ontario by a Canadian citizen and related entities.  (Declaration of Michael Jason Lee at ¶ 3) ("Lee Decl.").

As detailed further herein, Applicant has brought suit in the Ontario Superior Court of Justice seeking to recover funds that have gone missing through the course of dealing with a network of payment processing companies and related entities in Canada. (*Id.* at ¶ 4.) Among
///

other things, Applicant claims that these companies and related entities have converted

---

[1] Within the past week, Applicant's counsel, Michael Jason Lee, has communicated with Rob D. Cucher, counsel for Respondents, to advise of the imminent filing of this application and to inquire if he would accept electronic service of the application papers.  Mr. Cucher confirmed that he would accept service of the application papers.  As such, on the same day this application is filed, Mr. Lee will e-mail Mr. Cucher conformed copies of the application papers to his designated e-mail address.  Declaration of Michael Jason Lee at ¶ 19.

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES

$1,110,476.75 owed to Applicant through overt acts of fraud and conspiracy.

Bank records produced pursuant to an Order of the Ontario Superior Court of Justice show that Mathur's company Emblaze One Inc. had direct financial dealings with the payment processors at issue and sourced funds directly related to this matter for the benefit of the debtor payment processors (e.g., by paying a portion of the debt owed). (*Id.* at ¶ 5.) Moreover, it appears that funds owed to Applicant may have been directed to Mathur's company by the payment processors, rather than to the merchants to which those funds were due; alternatively, the funds may have been remitted by the merchants to Mathur's company. (*Id.*)

Through the instant application, Applicant seeks the aid of this Court in taking discovery from Mathur and Emblaze One Inc. concerning the entities at issue; financial connections with those entities; the particulars of payment processing channels used to process the subject payment transactions; and information regarding the tracing and recovery of the owed money. (*Id.* at ¶ 6.) Applicant seeks this and related information for use in an action against the parties in the Ontario Superior Court of Justice. (*Id.* at ¶ 7.)

## II.    STATEMENT OF FACTS

### A.    277 Ontario

Applicant 277 Ontario was created for the purpose of pursuing collection of the liquidated loss of $1,100,000 suffered by Affinitas Medios de Pago S.A.P.I de C.V. ("Affinitas"). (*Id.* at ¶ 8.) Affinitas has assigned to Applicant all legal rights, causes of action, and authority to pursue collection of the loss. (*Id.* at ¶ 9.)

### B.    Overview of Affinitas' Business

Affinitas is a payment facilitator that sources and manages payment solutions for internet merchants. Declaration of Martin Audiffred at ¶ 3 ("Audiffred Decl."). Affinitas' clients ("merchants") provide products and services to their respective customers in exchange for payments by Visa, Mastercard and/or other debit or credit cards. (*Id.*) Such cards are issued by a bank (the "issuing bank") which receives funds processed through the card payments including posting to the credit card account and then transmitting the amount of the payment, less fees kept by the bank, back to the merchants. (*Id.*) Affinitas is based in Mexico City. (*Id.*)

2

Merchants hire Affinitas to help them integrate and manage their web-based sales of goods and services which primarily support the on-line gaming industry internationally.  (*Id.* at ¶ 4.)  Affinitas can leverage its experience and global reach to the benefit of its merchant clients. (*Id.*)

Affinitas engages third-party businesses who work as intermediaries between banks and Affinitas' merchants in the role of a payment processor and at times as a "paymaster" (defined below).  (*Id.* at ¶ 5.)  A payment processor often has many clients whose customers pay for the merchants' respective products and services with debit and/or credit cards.  (*Id.*)  The payment processor receives card payments through an e-commerce, electronic gateway.  (*Id.*)  The funds from such e-commerce payments are held, allocated and accounted for in separate e-commerce merchant accounts.  (*Id.*)

A payment processor, or paymaster, typically has an existing arrangement with a bank who acquires ("processes") the merchants' transactions through the electronic gateway, settles and clears the amounts in the merchants' accounts, and then transmits the merchants' funds, less the bank's fee, to the payment processor via bank transfer.  (*Id.* at ¶ 6.)  Typically, companies such as Affinitas will not know who the payment processor/paymasters' bankers are, as the arrangement of the payment processor/paymaster with their bankers is part of the payment processor/paymasters' marketplace added value.  (*Id.*)

Upon receiving transfers from a bank, a payment processor is supposed to transmit the funds, less the payment processor's fee (usually a % of the gross amount), by bank transfer back to the merchants, representing the net payment from its customers for the merchant's products and services.  (*Id.* at ¶ 7.)  In this role, transmitting amounts to the merchants, from the card payments of their respective customers, has been referred to in the e-commerce industry as a "paymaster" function.  (*Id.*)  As is apparent from this explanation, there are four main parties to a typical merchant transaction:

- The merchant;
- The facilitator (Affinitas);
- The payment processor (i.e., paymaster); and

3

- A bank (which sends and receives funds from the customers' purchases).

(*Id.*)  As part of its operations, Affinitas seeks out new and innovative payment processing solutions for its client merchants, which is ultimately how the underlying dispute came to pass.  (*Id.* at ¶ 8.)

**C.    Affinitas Engages New Line Processing, Zed Payments and Maxwell Morgan as Payment Processors.**

In the Spring of 2020, Affinitas was hired by various merchants to implement and manage their online payment processing needs.  (*Id.* at ¶ 9.)  Affinitas then set out to find the appropriate payment processing partner for its client merchants.  (*Id.*)  Affinitas was eventually referred to a New York based company called New Line Processing LLC ("New Line Processing") and their affiliate Zed Payments.  (*Id.*)

New Line Processing represented itself to Affinitas as a payment processing brokerage house, and that it acted as an intermediary between merchants (i.e., Affinitas) and the payment processor / paymaster (i.e., Zed Payments, discussed below) to resolve issues as they arose and to manage the payment processing relationship.  (*Id.* at ¶ 10.)  New Line Processing operates out of Williamsville, New York.  (*Id.*)

Affinitas was also referred to a Canadian named Maxwell Dean Morgan, who advised Affinitas that he represented an entity called Zed Payments.  (*Id.* at ¶ 11.)  Morgan represented to Affinitas that Zed Payments was a payment processing solution provider (i.e. paymaster) that had formed direct relationships with reputable banks that were able to process the financial transactions of Affinitas' merchants.  (*Id.*)  Morgan further represented to Affinitas that he ultimately controlled the business and technical operations of Zed Payments, which he held out to be commercially registered in the Philippines and a provider of global payment processing solutions.  (*Id.*)

Following the introduction of Affinitas to New Line Processing, Zed Payments and Morgan, and after discussing Affinitas' merchant needs, New Line Processing recommended to Affinitas the payment processing solution be provided by Zed Payments through Morgan.  (*Id.* at ¶ 12.)  Throughout the payment processing relationship, New Line Processing

4

communicated with Affinitas and sent documents to Affinitas which they indicated were received from Morgan.  New Line Processing referred to Morgan and Zed Payments interchangeably.  (*Id.*)

For their brokerage and management services, New Line Processing was to earn a commission for every transaction completed between Affinitas' merchants and the payment processing service provider Zed Payments.  (*Id.* at ¶ 13.)

Among other reasons, Affinitas agreed to do business with Zed Payments because, as noted above, they represented that they had a direct, established arrangement with reputable bankers, and were able to process Affinitas' merchant transactions.  (*Id.* at ¶ 14.)  The credit and debit card payments of Affinitas' merchants were to be transacted through Zed Payment's electronic gateway.  (*Id.*)  Affinitas effectively acted as a "reseller" of Zed Payment's payment processing services through an integrated electronic gateway ("solution").  (*Id.*)  Zed Payments conducted the function of a "paymaster" to Affinitas' merchants by disbursing the processed payments to the merchants, less the respective fees of New Line Processing, Zed Payments and Affinitas.  (*Id.*)

**D.    Issues with Missing and Outstanding Transactions.**

Throughout June 2020, Affinitas coordinated with Zed Payments and New Line Processing to complete the technical integration of the Zed Payments payment processing solution for Affinitas' merchants.  (*Id.* at ¶ 15.)  The technical integration was conducted via a web-based chat over a Skype platform and included I.T. professionals on the Affinitas side to connect Zed Payments to Affinitas' merchants.  (*Id.*)  On the Zed Payments side, the technical integration was managed by Morgan and an individual named Michael A. Harris.[2]  (*Id.*)

On or about June 16, 2020, the technical integration between Affinitas' merchant accounts and the Zed Payments payment processing solution was completed.  (*Id.* at ¶ 16.)  The Affinitas' merchant online payment processing capabilities "went live," and Affinitas'

[2] Morgan has represented under oath that Michael A. Harris is an alias used by Karan Talwar. As such, the proposed document production request.as to Harris is worded to include Talwar, as well.

merchants started generating online sales of their goods and services.  (*Id.*)  On July 17, 2020, the contractual terms of the agreement between Affinitas and Zed Payments was formalized in a written agreement.  (*Id.*)

Over the following 60 days (between June and August 2020), Affinitas did not receive timely payments from Zed Payments.  (*Id.* at ¶ 17.)  Indeed, the net total amount that should have been paid to Affinitas' merchants was $1,520,587.51.  (*Id.*)  The actual amount paid was $483,190.11 (less than 32% of what was owed).  (*Id.*)  By August 2020, the total outstanding balance due to Affinitas' merchants had grown to over $1,037,397.40, made up of two categories:

a) "Missing" Wire Transfers: missing (or lost) wire transfers represented wire transfer payments which defendants claimed had been sent to Affinitas' merchants, and for which Affinitas was provided "wire transfer confirmation" documents from Morgan, but which funds were never received by those merchants.  To date, the total amount of "missing" wire transfers is $290,343.27; and

b) "Outstanding" Transfers: outstanding transfers represented those funds due and owed to Affinitas' merchants which have not been remitted (and which defendants have not claimed have been remitted).  To date, the total amount of "outstanding" transfers due to Affinitas' merchants is $747,054.13.  (*Id.*)  In addition to the missing and outstanding transfers as set out above, the Affinitas merchants were also entitled to the return of $183,079.35 in reserve funds per the terms of the agreement between the parties, which were initially held back for six months and due to Affinitas by February 2021.  (*Id.* at ¶ 18.)  To date, the reserve funds that were required to be returned to Affinitas are also outstanding.  (*Id.*)

**E.    Morgan's Claims of "Banking Issues"**

In response to these issues, Affinitas exchanged email communications with New Line Processing and Morgan regarding the reasons for the delay in payment to Affinitas' merchants.  (*Id.* at ¶ 19.)  On many occasions, Affinitas requested detailed information from Morgan and New Line Processing to trace the merchants' wire payments.  (*Id.*)  But Morgan refused and/or failed to provide the requested detailed information.  (*Id.*)

6

Specifically, Affinitas requested copies of the MT103 confirmations (the swift payment confirmation message used for international transfers) from Morgan regarding the wire transfer payments that had been delayed/not received. (*Id.* at ¶ 20.) Affinitas likewise provided reconciliations and highlighted the merchants that were still missing payments going back to June 2020. (*Id.*)

In response, New Line Processing represented to Affinitas that it was making inquiries for the cause of delay with Zed Payments and Morgan. (*Id.* at ¶ 21.) In turn, Morgan represented to New Line Processing and Affinitas that the cause for the delay was banking issues, and that the intermediary financial institutions had placed holds on the funds. (*Id.*) Notwithstanding this claim, however, Morgan refused to disclose to Affinitas the identities of the banks at issue, and Affinitas was thus not able to verify the veracity of Morgan's representations. (*Id.*)

Morgan's representation that the cause for delay was due to "banking issues" was concerning to Affinitas, as the reason why Affinitas engaged Morgan and Zed Payments in the first place was due to their purported relationships with reputable banking institutions. (*Id.* at ¶ 22.) Affinitas relied on Morgan's representations that he was actively seeking solutions to the delayed payments. (*Id.*)

Over the next few weeks, Affinitas grew increasingly unhappy with Zed Payments and Morgan's performance, and Affinitas' merchants were concerned that the processed funds were not being received on a timely basis in line with the agreement. (*Id.* at ¶ 23.) Affinitas reported to New Line Processing and Morgan that unless and until the missing wire transfers and outstanding transfers were resolved, the merchants would stop processing payments. (*Id.*) New Line Processing and Morgan continued to represent to the Affinitas that the delay in payment was due to banking issues and delays outside of their control. (*Id.*)

///

### F.    251 Ontario and 241 Ontario.

While Affinitas was struggling to manage the numerous missing and outstanding transactions discussed *supra*, New Line Processing provided Affinitas wire transfer

7

confirmations on July 17, 2020 for two payments which had purportedly been sent that day (and which were previously delayed). (*Id.* at ¶ 24.) New Line Processing represented to Affinitas that the wire transfer confirmation had been sent by Zed Payments and Morgan to New Line Processing. (*Id.*)

As is relevant here, the purported wire transfer confirmations concerned two wire payments due to Affinitas' merchants and appeared to be generated by TD Canada Trust Bank ("TD Bank") relating an account held in the name of 2513086 Ontario Inc. ("251 Ontario"). (*Id.* at ¶ 25.) Those documents further indicated that 251 Ontario had a business address of 10-9275 Markham Road, Suite 113, Markham, Ontario. (*Id.*) While Affinitas had never heard of 251 Ontario before that time, it would later be learned that Morgan was, in fact, directly tied to the entity. (*Id.*)

Notwithstanding the representations of New Line Processing and Morgan, the two wire transfers were never actually received by Affinitas' merchants. (*Id.* at ¶ 26.) On July 30, 2020, New Line Processing likewise produced to Affinitas what it claimed to be "tracing" information related to some of the missing or outstanding funds. (*Id.*) Here, too, these records related to TD Bank, but actually referenced confirmations from April 2012 (years before the relevant events) among other indicia of forgery. (*Id.*)

Eventually, Morgan would claim that a previously unidentified entity known as "Blade Payments" (also known as BladePayments or Bladepayments) was actually responsible for the delays, purportedly acting as a "rogue" business partner that he claimed owned 251 Ontario. (*Id.* at ¶ 27.) These claims would likewise prove to be bogus in the light of day, and it appears that Morgan simply concocted Blade Payments to serve as a scapegoat, and also referred to likely fake company representatives that he purported to be communicating with named Devin Crosby, Nathan Joseph, Damon Porter and Cheryl Richards. (*Id.*)

///

Ultimately, Morgan pledged to repay the roughly $1 million owed to Affinitas pursuant to a payment schedule. (*Id.* at ¶ 28.) In truth, only one payment was ever made—approximately $110,000 wired from yet another new entity named 2416336 Ontario Inc. ("241 Ontario") on

August 21, 2020. (*Id.*) Here, too, the funds were tied to a TD Bank account, and it has since been discovered that 241 Ontario is an active Ontario corporation with Morgan serving as its sole registered officer and director. (*Id.*) After a few more weeks of delay tactics and shameless falsehoods, communications between the parties ultimately broke down completely. (*Id.*)

## G. Discovery Regarding TD Bank.

On February 18, 2021, Applicant brought a "Norwich application" before the Ontario Superior Court of Justice, seeking production from TD Bank of the account records of defendants 251 Ontario (which Morgan had alleged was owned by Blade Payments) and 241 Ontario, as well as the account opening and administration documents for the account(s) (the "TD Bank Norwich"). (Declaration of Norman J. Groot at ¶ 3) ("Groot Decl.").

Among other things, the TD Bank Norwich sought to confirm whether the TD Bank wire transfer documents produced by Morgan and provided to Affinitas were legitimate TD Bank records, and to confirm whether the wire transfers were sent from the account of 251 Ontario as represented by Morgan. (*Id.* at ¶ 4.) The TD Bank Norwich further sought to investigate whether the missing and outstanding funds due to Affinitas, as described above, could be traced through the TD Bank accounts, and to obtain or preserve evidence of any wrongdoing. (*Id.*)

On March 4, 2021, TD Bank produced documentation regarding several bank accounts tied to 251 and 241 Ontario, including 251 Ontario's Account No. 7202235 ("Account 235") and 241 Ontario's 7200478 ("Account 478"). (*Id.* at ¶ 5.)

## H. Additional Investigations

During the course of its investigation, 277 Ontario identified four additional companies directly connected to this payment processing scam: Baazel Max Advertising, Elevation Management, ND Group LLC and Roberge Oil Markings. (*Id.* at ¶ 6.) Indeed, it appears these entities were used as dummy companies to obtain merchant accounts under false pretenses from United States-based acquiring banks, and these merchant accounts were used to process gaming transactions unbeknownst to the acquiring banks. (*Id.*) (Baazel Max Advertising, Elevation Management and Roberge Oil Markings were also descriptors used on some of the successfully processed payments.) (*Id.*)

9

Also, Morgan has represented under oath that remittances to a United Kingdom entity named Khera Investment Solutions Ltd. were made at the direction of Respondents. There were a total of nine remittances during the time frame of June 25, 2020 through August 14, 2020 totaling $1,498,342.80. This is the precise time period that the $1,110,476.75 first went missing. As such, records specific to this entity that may be in Respondents possession, custody or control are directly relevant to the Ontario litigation. (Groot Decl. at ¶ 17.)

## I.    Connection to Respondents.

Critically, the TD Bank Norwich documents showed that the only significant deposits into 251 Ontario's TD Account 235 were received from **Emblaze One Inc.**, an entity controlled by Respondent **Jaspreet Mathur**. (Audiffred Declaration at ¶ 7.) According to public records, Emblaze One Inc. was a Canadian corporation until 2018 and since that time has operated as a US based corporation. (Lee Decl. at ¶ 10.) Mathur is publicly identified as the Founder and CEO of Emblaze One Inc. (*Id.* at ¶ 11.)

Following receipt of large sums from Emblaze One Inc., a portion of the funds were sent directly to various Affinitas merchants. (Groot Decl. at ¶ 8.) For example, on July 21, 2020, 251 Ontario received $82,482.50 from Emblaze One Inc. through TD Account 235. (*Id.*) On the following day, $78,398.37 was disbursed from TD Account 235 to an Affinitas' merchant account. (*Id.*) The large deposits from Emblaze One Inc. stop flowing to 251 Ontario around August 21, 2020. (*Id.*)

Similar to the activity in 251 Ontario's Account 235, the primary source of deposits into 241 Ontario's Account 478 during the material times was wire transfers from Emblaze One Inc. (*Id.* at ¶ 9.) TD Account 478 also sent some funds directly to Affinitas' merchant and made direct transfers to New Line Processing. (*Id.*)

Commencing in July 2020, 241 Ontario also sent large wire transfers to Deltec Bank and Trust Limited, which is a financial institution operating in Nassau, Bahamas. (*Id.* at ¶ 10.) The source of funds for the transfers to Deltec Bank are funds received from *inter alia* Emblaze One Inc. and 251 Ontario. (*Id.*) For example, On August 5, 2020, 241 Ontario's TD Account 478 received $94,366.50 from 251 Ontario's TD Account 235. (*Id.*) On the same day, and under

10

thirty minutes later, $94,366.50 was wired from 241 Ontario's TD Account 478 to Deltec Bank and Trust Limited.  (*Id.*)  The transfers to Deltec may have been an attempt by the above-referenced entities to convert Affinitas' funds.  (*Id.*)

On August 20, 2020, 241 Ontario's TD Account 478 also received $111,982.50 from Emblaze One Inc.  (*Id.* at ¶ 11.)  On the following day, the sole repayment made to Affinitas of $110,000.00241 was wired from Ontario's TD Account 478.  (*Id.*)  In other words, the partial repayment of the debt to Affinitas was directly sourced from Emblaze One Inc. through the maze of transactions traced above, and through the same source as payments from 251 Ontario to Affinitas' merchants.  (*Id.*)  Applicant respectfully submits that there would be no logical reason for Mathur and his company to partially pay the debt owed to Affinitas absent some financial or business connection with the payment processing entities at the center of this dispute.  (*Id.*)

## J.      Current Foreign Proceeding and Additional Connections to Respondents.

On June 11, 2021, Applicant brought a legal action against Morgan and various other related entities in the Ontario Superior Court of Justice.[3]  (*Id.* at ¶ 12.)  A copy of the Notice of Action in that proceeding is attached to the Lee Declaration as Exhibit "A."  Applicant alleges claims of fraud, breach of trust, conversion, conspiracy, and unjust enrichment, among others, and seeks punitive, exemplary, and aggravated damages against Morgan and the other defendants, including Morgan's equally deplorable co-fraudster, Tricia Edwards.  (*Id.*)

On June 14, 2021, the Honorable Justice Myers of the Ontario Superior Court of Justice further granted an "Anton Piller Order," that permitted Applicant to enter and remain in the residence of defendants for the purpose of identifying, inspecting, removing and preserving certain evidence believed to be at risk of destruction or spoliation.  (*Id.* at ¶ 13.)

On the same day, the Superior Court of Justice granted a Mareva injunction against certain defendants requiring the disclosure and freeze of assets, and appearance of certain

---

[3] The case is captioned as *277 Ontario Inc. v. Maxwell Dean Morgan, et al.*, Court File No. CV-21-00663862-0000.

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF
POINTS AND AUTHORITIES

defendants for examination under oath on June 25, 2021 for the purpose of tracing and accounting the missing funds. (*Id.* at ¶ 14.)

On June 18, 2021, Morgan submitted a partial accounting and Affidavit to the Court in which he directly identifies **"Emblaze One Inc. owned by Jaspreet Mathur residing in California"** as the **"actual processor"** of Affinitas' claimed funds. (*Id.* at ¶ 15.) A copy of Morgan's Affidavit is attached to the Lee Declaration as Exhibit "B". Significantly, Morgan was ordered to produce banking statements, transaction records, and other financial documentation but failed to do so, further demonstrating the need to seek such information and materials from Mathur and Emblaze One. (*Id.*)

## III.   THE CONTEMPLATED DISCOVERY

Applicant now seeks the assistance of this Court in obtaining information critical to its efforts to recover the funds owed to it.

As referenced above, records produced by TD Bank identify Emblaze One Inc. as connected to the central players in this matter, and as directly sourcing funds used to: 1) pay Affinitas merchants; 2) transfer funds to New Line Processing; and 3) make a partial repayment to Affinitas of the debt at issue.

As such, Applicant believes Mathur and Emblaze One Inc. to have documents and information that would reveal the particulars of the financial and/or business relationship with Zed Payments and New Line Processing, as well as information, documents concerning Respondents' relationship with Morgan and multiple other third parties believed to be connected to the receivable and the whereabouts of the missing $1,110,476.75.

Applicant's belief is well founded. Bank records already produced in the foreign proceeding establish that Respondents clearly have a connection to the funds and entities at issue, and that continuing to unravel the movement of Affinitas' money will require documentation Respondents would be expected to possess. It also must be noted that such information will likely be unavailable from any other source—Morgan was ordered to but has as of today's date failed or been unable to provide key records and documents that would allow Affinitas to continue discovery relevant to its claims.

12

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES

Respondents are also in the position to provide deposition testimony that will enable the Superior Court of Justice to better understand the claims before it. Indeed, almost as critical as the documentation requested is the need for Respondents to explain the relationships and money movements by and among defendants, Respondents, and Respondents' acquiring banks or other intermediaries. To that end, Respondents' deposition testimony is expected to illuminate any unwritten understandings or agreements between those parties, the reason(s) for the transfers between Respondents and defendants, whether Respondents were—as Morgan claims—the ultimate "actual processor[s]" of Affinitas' funds, and the location of the missing and outstanding funds.

Mathur maintains a residence and currently resides in Los Angeles, California. (Lee Decl. at ¶ 12.) A copy of Applicant's proposed discovery is attached to the Lee Declaration as Exhibit "C".

## IV.   277 ONTARIO'S LOCATION

277 Ontario is a pseudonym for 2770095 Ontario Inc. which is a corporation operating pursuant to the laws of Ontario, Canada. 277 Ontario was incorporated on August 5, 2020, with a registered office in Toronto, Ontario.

## V.   THE APPLICATION SATISFIES SECTION 1782'S REQUIREMENTS

28 U.S.C. §1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to ... the application of any interested person…

The fundamental purpose of §1782 is to provide a procedure whereby a qualified applicant may obtain "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 247 (2004). "Any interested person" includes litigants before foreign or international tribunals, and includes corporate entities as well as natural persons. *Id.* at 256; *see Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1109 (9th Cir. 2015).

///

The policy behind §1782 is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful, but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Id.,* at 262. The "prima facie showing mandated by the statute is that the application be made (1) 'by a foreign or international tribunal' or 'any interested person,' (2) that it be 'for use in a proceeding in a foreign or international tribunal,' and (3) that the person or entity from whom the discovery is sought be a resident of or be found in the district in which the application is filed." *In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998); *Republic of Kazakstan v. Biedermann Int'l,* 168 F.3d 880, 881 (5th Cir. 1999).

### A.  Applicant is an "Interested Person".

As a Plaintiff in foreign litigation, 277 Ontario satisfies the "interested person" requirement of Section 1782. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke Section 1782."); *see also John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132 (3d Cir. 1985) (a party to foreign litigation is an interested person under Section 1782).

### B.  The Requested Discovery Is for Use in Conjunction with Proceedings Before a Foreign Tribunal.

As discussed above, Applicant seeks discovery from Mathur and Emblaze One Inc. to further understand the nature of the foreign defendants' business dealings and finances, as well as to assist in the tracing and recovery of Affinitas' funds. Such information is directly sought "for use in a proceeding in a foreign or international tribunal"—namely, an active proceeding in Ontario, Canada—as required by Section 1782.

### C.  Jaspreet Mathur Resides in and Can Be Found in the Central District of California

Both Mathur's home and place of business are located in Los Angeles, California. (Lee Decl. at ¶ 12.) Therefore, Mathur is within this Court's jurisdiction and subject to its authority over the requested discovery sought in this Application.

///

///

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES

**D.      Emblaze One Inc. Operates in and Can Be Found in the Central District of California**

Emblaze One Inc. has a business address and service address in Los Angeles, California. (*Id.* at ¶ 10.)  As such, Emblaze One Inc. is within the Court's jurisdiction and subject to its authority over the requested discovery sought in this application.

**E.      Discretionary Considerations Merit Granting This Application.**

In addition, certain discretionary factors that "bear consideration in a ruling on a §1782 request" also favor granting the instant Application.  *See, Intel,* 542 U.S. at 264-65.  These include:

(1)      Whether the person from whom discovery is sought is a non-participant to the foreign proceeding thereby making the need for the aid more apparent;

(2)      The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or court abroad to federal court judicial assistance;

(3)      Whether the §1782 application for discovery is an attempt to circumvent the foreign proceeding or undermine foreign laws;

(4)      Whether granting discovery that is narrowly tailored is consistent with the aims of the statute to promote efficiency and reciprocity.

Here, each of these discretionary factors weighs in favor of granting the Application.

First, Applicant's need for the discovery from Respondents by means of §1782(a) is heightened by the fact that they are not parties to the proceeding currently occurring in Canada.

As the Supreme Court noted: "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel,* 542 U.S. at 264-65.  As such, relief under §1782(a) may not be warranted where the relevant tribunal does not need the assistance.  *Id.*  In contrast, here, Respondents possess evidence relevant in the foreign proceedings, but will not be parties there.  Indeed, Respondents will not be brought before any foreign tribunal for the purpose of obtaining the evidence currently in their possession, nor is the discovery sought from them within the jurisdictional reach of the courts of Canada.

15

Nonetheless, documents in their possession and their testimony are squarely relevant to Applicant's claims in Canada.  This weighs in favor of granting the Application.

Second, there is no reason to believe that the Ontario Superior Court of Justice would be unreceptive to this Court's grant of the discovery sought.  Canada is a party to the New York Convention.  Therefore, there is no reason to believe that those courts would object to this Court's assistance with discovery that will, by providing information concerning the transfers of Applicant's funds, facilitate the foreign proceedings and the potential recovery of those funds.

Further, the courts have held that the liberal policy of granting assistance favors allowing a petitioner the discovery sought so that the foreign court itself may determine the admissibility or relevance of the evidence obtained.  *See In re Euromepa S.A.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995) (explaining that "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," and that "[a]bsent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'"); *In re Application of Grupo Qummam*, No. M 8-85 (DC), 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) ("The Mexican court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if Qumma is permitted to conduct the requested discovery first.").

Third, the discovery is centrally relevant to the proceeding in Canada, and would not conflict with or circumvent any foreign proof-gathering restrictions.  Courts have interpreted this discretionary factor as an inquiry into the petitioner's good faith: "[A] district court could consider whether the §1782(a) request conceals an attempt to circumvent foreign-proof gathering restriction or other policies of a foreign country or the United States." *Intel,* 542 U.S. at 264-65; *see, also, In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf,* Case No. Ml 9-88, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006).  Applicant's request here is made in good faith and not for purposes of harassment.  *See, Brandi-Dohorn v. IKB Deutsch*

16

*Industriebank AG,* 673 F.3d 76, 81 (2d Cir. 2012).  Thus, 28 U.S.C. §1782 is a proper and necessary method by which to obtain the critical evidence sought by Applicant.

Fourth and finally, any discovery under the subpoenas will not be onerous for Respondents.  Courts may consider whether the discovery requests under §1782 are "unduly intrusive or burdensome" and should be "rejected or trimmed."  *Intel,* 542 U.S. at 265.  In this instance, Applicant seeks information and documents from Respondents narrowly tailored to information concerning the accounts linked to Morgan, Zed Payments, New Line Processing, and their principals, agents, and related individuals and entities.  It is unlikely that such information or documentation would be voluminous or difficult to search for and produce. Accordingly, this factor also weighs in favor of granting the instant Application.

**VI.    CONCLUSION**

Based on the foregoing, Applicant respectfully requests that this Court grant the instant Application in its entirety.

**DATED** this 28th day of June, 2021.

**Law Offices of Michael Jason Lee, APLC**

*/s/ Michael Jason Lee*
Michael Jason Lee, Esq.
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
Attorney for Applicant, 2770095 Ontario, Inc.

**Dillon Miller, Ahuja & Boss, LLP**

/s/ *Christopher J. Beal, Esq.* (*with permission*)
Christopher J. Beal, Esq
5872 Owens Avenue, Suite 200
Carlsbad, California 92008
Attorney for Applicant, 2770095 Ontario, Inc.

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES