Eugene Rome (SBN 232780)
erome@romeandassociates.com
Brianna Dahlberg (SBN 280711)
bdahlberg@romeandassociates.com
**ROME & ASSOCIATES, A.P.C.**
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:   310-282-0690
Facsimile:    310-282-0691

Attorneys for Respondents
EMBLAZE ONE INC. and
JASPREET MATHUR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Application of*<br><br>2770095 Ontario Inc.<br><br>Applicant,<br><br>For the Issuance of a Subpoena for the Taking of a Deposition and the Production of Documents for use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 | Case No. 2:21-mc-01004-CBM (JCx)<br><br>**MEMORANDUM IN OPPOSITION TO 2770095 ONTARIO'S APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782** |

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | RELEVANT FACTS | | 4 |
| | A. | Background on the Parties and the Canadian Litigation | 4 |
| | B. | 277 Ontario's Proposed Subpoenas | 5 |
| III. | ARGUMENT | | 7 |
| | A. | The Requests Exceed Material "For Use" in a Foreign Proceeding | 7 |
| | B. | The Intel Factors Weigh Heavily Against Granting the Application | 8 |
| | C. | The Requests Are Unduly Intrusive and Burdensome | 9 |
| | D. | The Requests Implicate Serious Confidentiality Concerns | 10 |
| | E. | The Material Sought Is Not Outside the Reach of the Canadian Court | 11 |
| IV. | CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

## CASES

*Aimsely Enters. Inc. et al. v. Merryman et al.*, Case No. 19-cv-02101-YGR (N.D. Cal. April 6, 2020) ................................................................. 2

*Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621 (8th Cir. 2016) ....................... 10

*In re Ex Parte Apple Inc.*, Civil No. 15cv1780 BAS(RBB), 2015 WL 5838606 (S.D. Cal. Oct. 7, 2015) ................................................................ 12

*In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029 (N.D. Cal. 2016) .................................................................................. 9

*In re Ex Parte LG Electronics Deutschland GmbH*, No. 12cv1197-LAB (MDD), 2012 WL 1836283 (S.D. Cal. May 21, 2012) ............................... 12

*In re Hedrick House Ltd.,* No. SA MC 20-00005-DOC (DFM), 2020 WL 3965999 (C.D. Cal. Mar. 31, 2020) ................................................... 2, 3, 8

*In re Komnokai*, Case No. 4:20-mc-80149-KAW, 2020 WL 6684565 (N.D. Cal. Nov. 12, 2020) .................................................................... 2, 4

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ................. passim

*Khrapunov v. Prosyankin*, 931 F.3d 922 (9th Cir. 2019) .......................................... 7

*Matter of Application of O2CNI Co., Ltd.*, No. C 13-80125 CRB (LB), 2013 WL 5826730 (N.D. Cal. Oct. 29, 2013) ................................................. 9

## STATUTES

28 U.S.C. § 1782 ............................................................................................... passim

## RULES

Fed. R. Civ. P. 26(b)(1) ............................................................................................. 7

Fed. R. Civ. P. 27 .................................................................................................... 10

Fed. R. Civ. P. 30(b)(6) ......................................................................................... 3, 7

Fed. R. Civ. P. 45 .................................................................................................. 3, 7

## I. INTRODUCTION

Respondents Emblaze One Inc. ("Emblaze") and Jaspreet Mathur ("Respondents") respectfully submit this Opposition to Applicant 2770095 Ontario Inc.'s ("277 Ontario") Application to Conduct Discovery Pursuant to 28 U.S.C. § 1782 ("Application").

As detailed below, 277 Ontario's Application seeks highly invasive and burdensome discovery from Emblaze, a U.S. payment processing company, and its CEO for use in a Canadian lawsuit. 277 Ontario has filed the underlying lawsuit to recover funds owed to a group of unnamed merchant clients of a Mexican credit card processing company, Affinitas Medios de Pago S.A.P.I. de C.V. ("Affinitas"), which were allegedly stolen by Affinitas' payment processing partner, Maxwell Morgan, and his companies.

277 Ontario contends that Emblaze had "direct financial dealings" with the payment processors involved. 277 Ontario's proposed document subpoenas seek "all" communications "between or among" Respondents and no fewer than 13 other parties, including direct competitors of Affinitas, with no limitations as to subject matter. The subpoenas also seek confidential contracts, technical information, information regarding Emblaze's banking relationships, and other competitively sensitive information. In addition, 277 Ontario seeks to compel Emblaze's CEO to travel more than 100 miles to attend a deposition in San Diego, California. 277 Ontario also seeks an open-ended deposition of Emblaze, with no list of matters for examination attached to its proposed subpoena.

*First*, as a threshold matter, it is unclear whether 277 Ontario's Canadian complaint even asserts viable claims in the first place. 277 Ontario is a Canadian entity created for the purpose of pursuing collection of the merchants' funds, to whom Affinitas assigned its claims. *See* Decl. of Michael Jason Lee in support of App. (ECF No. 1-3) ("Lee Decl."), ¶¶ 8-9. Public court records show that Affinitas' form contracts contain a mandatory forum selection clause providing for all disputes

to be arbitrated or litigated in Mexico. *See* Order Granting In Part Motion of Affinitas to Dismiss on Grounds of Forum Non Conveniens in *Aimsely Enters. Inc. et al. v. Merryman et al.*, Case No. 19-cv-02101-YGR, ECF No. 70 at 7:16-20 (N.D. Cal. April 6, 2020) (courtesy copy attached as Ex. 1 hereto). When merchants sue Affinitas in forums other than Mexico to recover their processing funds, Affinitas seeks dismissal of claims against it based upon the forum selection clause. *Id*. Yet, in the instant Canadian litigation, Affinitas appears to be attempting to avoid its own forum selection clause.[1] Affinitas cannot have it both ways. Whether a foreign proceeding states a viable claim is relevant to whether the Section 1782 request is "a fishing expedition or vehicle for harassment." *See In re Komnokai*, Case No. 4:20-mc-80149-KAW, 2020 WL 6684565, at *3 (N.D. Cal. Nov. 12, 2020).

*Second*, the discovery 277 Ontario seeks through its Application far exceeds what is permissible under the Federal Rules. The proposed discovery is grossly disproportionate to the needs of the Canadian litigation. 277 Ontario's proposed subpoenas seek "ALL BANK RECORDS reflecting transfers" to accounts associated with Morgan's companies and "ALL COMMUNICATIONS concerning, referring to or relating" to those accounts, notwithstanding that Morgan's affidavit testimony offered by 277 Ontario explains that Emblaze processed payments for a number of clients—*i.e*., not just the merchants at issue in the Canadian litigation. The subpoenas also seek "ALL COMMUNICTIONS" between or among Respondents and at least 13 other persons and entities in the payment processing industry with no subject matter limitations whatsoever.

Notably, in the recent matter *In re Hedrick House Ltd*., Magistrate Judge Douglas F. McCormick previously denied a prior 28 U.S.C. § 1782 application filed by the same attorneys representing 277 Ontario in this proceeding, Christopher J. Beal and Michael Jason Lee, in which they were seeking very similar overbroad and

---

[1] Tellingly, the Canadian complaint does not attach copies of the relevant contracts. *See* ECF No. 1-4.

invasive discovery from the exact same Respondents. *In re Hedrick House Ltd.,* No. SA MC 20-00005-DOC (DFM), 2020 WL 3965999, at *1 (C.D. Cal. Mar. 31, 2020)). In denying the prior application, Judge McCormick wrote: "The breadth of HHL's request cause me more than some reservations that HHL is seeking information from Respondents for a purpose more substantial than a mere fishing expedition. In such a circumstance the authority is clear: the application should be denied." *Id*. at *2 (internal citations omitted).[2]

Moreover, in addition to the document subpoenas, 277 Ontario also seeks to depose Emblaze but has included no list of topics in violation of Rule 30(b)(6)'s requirement that the matters for examination be described with reasonable particularity. And all four proposed subpoenas violate the geographic limitations of Rule 45 by purporting to require Respondents, who are non-parties, to comply more than 100 miles from where they reside. In short, 277 Ontario's proposed discovery appear calculated to impose and unjustifiable intrusion and burden on Respondents.

*Third*, there are no indications that the Canadian court would offer necessary safeguards to protect the confidential information sought by 277 Ontario. Indeed, 277 Ontario itself acknowledges in its own complaint that the identity of the banks used by payment processors and their arrangements are typically confidential and "part of the payment processor/ paymasters' marketplace added value." ECF No. 1-4, ¶ 18. 277 Ontario further acknowledges that at least one of the processing companies centrally involved in the dispute (a party with whom Affinitas did business, unlike Respondents) refused to provide its contracts or communications due to confidentiality obligations. *Id*. ¶ 89. 277 Ontario's broad discovery requests into Respondents' contracts with other processors, its relationships with banks, and

---

[2] After the attorneys re-filed a significantly modified version of their Section 1782 application in the *Hedrick House* matter, Judge McCormick partially granted the application but eliminated many of the document requests and denied the request for a deposition altogether. *See* Order in *In re Hedrick House Ltd.*, ECF No. 6 at 3. Later, he permitted a deposition to go forward in response to a separate motion.

"ALL DOCUMENTS . . . concerning, referring to or relating to" its technical integration process threaten to force Emblaze to violate its confidentiality obligations to third parties and, if permitted, would cause Emblaze competitive harm.

*Fourth*, the undue intrusion of 277 Ontario's requests to Respondents is further emphasized by the fact that 277 Ontario has already obtained responsive documents related to tracing the funds at issue in the Canadian litigation, including an accounting of the merchants' funds at issue and the bank records of the relevant accounts. *See* ECF No. 1-4, p. 56-62; App. at 9:5-19. 277 Ontario's proposed discovery thus reduces to nothing more than "a fishing expedition or vehicle for harassment." *See In re Komnokai*, 2020 WL 6684565, at *3

Accordingly, the Court should deny 277 Ontario's Application.

## II. RELEVANT FACTS

### A. Background on the Parties and the Canadian Litigation

In the Canadian litigation, 277 Ontario is seeking to collect payment processing funds allegedly owed to merchants who engaged Affinitas, a Mexican payment processing company, to provide payment processing services for the merchants' internet businesses. ECF No. 1-4, ¶ 15. Affinitas engages third-party business who work as intermediaries between the banks and Affinitas' merchant clients. *Id*. at ¶ 17. In this case, one of Affinitas' intermediaries, Morgan, allegedly stole a portion of the merchants' processing funds. Affinitas then assigned its legal rights to pursue collection of the funds to 277 Ontario, an entity created for that purpose. Lee Decl., ¶¶ 9-10.

For the group of merchants at issue, Affinitas engaged a payment processing brokerage house, New Line Processing, and its affiliated payment processing service provider, Zed Payments, to process the transactions. ECF No. 1-4, ¶¶ 21-22, 36. In the lawsuit, 277 Ontario alleges that Zed Payment's representative, Maxwell Morgan, stole $1.1 million of Affinitas' merchant funds through a network of

companies. 277 Ontario accuses Morgan of providing forged wire transfer records and making misrepresentations to Affinitas about the entities involved in the processing. *Id.* at ¶¶ 26-27. In August 2020, Morgan committed to repay the missing funds and two partial payments were made from companies connected to Morgan, 241 Ontario and 251 Ontario. *Id.* at ¶¶ 64, 79.

In March 2021, 277 Ontario obtained bank records and other information related to those companies' accounts through an ex parte Norwich Application. *Id.* at ¶¶ 104-110. According to 277 Ontario, the records show that those accounts received funds from Emblaze, and that Emblaze therefore "sourced funds" related to this matter. It also contends that 241 Ontario transferred funds received from Emblaze to a bank in the Bahamas. 277 Ontario does not provide the actual bank records at issue, but instead relies on hearsay of its counsel about what the records purportedly show. *See* Decl. of Norman J. Groot (ECF No. 1-2), ¶¶ 7-11.

On June 11, 2021, 277 Ontario sued Morgan and various entities and individuals related to him in the Ontario Superior Court of Justice. App. at 11. In the action, 277 Ontario obtained an "Anton Piller Order" that permitted it "to enter and remain in the residence of defendants for the purpose of identifying, inspecting, removing and preserving certain evidence believed to be at risk of destruction or spoliation." *Id.* 277 Ontario also obtained an order requiring the defendants to appear for examination under oath on June 25, 2021 for the purpose of tracing the missing funds. *Id.* at 11-12. It also obtained from Morgan an accounting of the funds at issue. ECF No. 1-4 at p. 57-63.

### B. <u>277 Ontario's Proposed Subpoenas</u>

277 Ontario's Application includes sweeping requests directed to both Emblaze and Mathur for the following categories of documents:

- All bank records reflecting transfers to all accounts associated with two Canadian companies related to the central defendant, Morgan (Request 1).

- All communications "concerning, referring to or relating to" those accounts (Request 2).
- All communications "between or among" Respondents and at least 13 other parties including people and companies who are direct and indirect competitors of Affinitas in the payment processing industry (Morgan, 241 Ontario, 251 Ontario, New Line, and Zed Payments, Blade Payments, Khera Investment Solutions Ltd., Tricia Edwards, Michael A. Harris, Baazel Max Advertising, Elevation Management, ND Group LLC, Roberge Oil Markings). It also seeks all communications "concerning, referring to or relating to any account" held in those parties' names (Requests 3-5).
- All documents in Respondents' concerning "AFFINITAS, BLADE PAYMENTS, or KHERA" (Requests 6-7).
- All documents "constituting any agreements, contract, arrangements, understandings, or confirmations" with the 13 parties (Request 8) and all documents reflecting any transfer of funds to or from those parties (Request 9).
- All communications with "any bank, financial institution, or other company or individual concerning or relating to" the 13 parties (Request 10).
- An array of documents and communications related to any payments or processing for Affinitas, without any limitation to the claims or merchant clients involved the lawsuit (Requests 11-15).
- All documents "concerning, referring to or relating to the technical integration process" used to connect Affinitas to any payment processing solution (Request 16); and
- All documents and communications related to transactions between Respondents and accounts related to Morgan's companies, without

>>limitation to the claims or merchant clients involved in the lawsuit (Requests 17-19).

*See* ECF No. 1-4 at p. 69-71.

In addition, 277 Ontario seeks to compel both Emblaze and Mathur to appear for depositions at the office of its counsel located in San Diego, California. ECF No. 1-4 at p. 81, 85. The location for both depositions is more than 100 miles away from Mathur's residence in Santa Monica and Emblaze's office in Beverly Hills, in violation of the geographic limits of Rule 45(c). The proposed deposition subpoena to Emblaze includes no list of matters for examination, in violation of Rule 30(b)(6).

### III. ARGUMENT

Section 1782 permits district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought "resides or is found" in the district of the district court where the application is made; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the application is made by a foreign or international tribunal or "any interested person." *Khrapunov v. Prosyankin*, 931 F.3d 922, 295 (9th Cir. 2019); *see* 28 U.S.C. § 1782(a). "Additionally, even where an applicant satisfies § 1782's statutory prerequisites, the district court still retains substantial discretion to permit or deny the requested discovery." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

### A. The Requests Exceed Material "For Use" in a Foreign Proceeding

On the "for use" factor, Federal Rule of Civil Procedure 26(b)(1) provides the proper standard for determining whether the factor is met. Rule 26(b)(1) requires not only that discovery sought be "relevant to any party's claim or defense," but also that it be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Whether discovery is "proportional" requires consideration of its "importance . . . in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. Yet 277 Ontario makes no genuine attempt to

explain how the discovery it seeks meets these requirements. Indeed, the discovery sought does not meet them.

277 Ontario attempts to meet the "for use" requirement by stating without support that the discovery it seeks from Respondents is "narrowly tailored" and unlikely to be "voluminous or difficult to search for and produce." App. at 17. These representations are belied by the actual requests, which go far beyond what could be "relevant to any party's claim or defense" or "proportionate to the needs of the case." Just as in the prior *Hedrick House* application filed by the same lawyers against the same Respondents, "significantly, and contrary to [the applicant's] representation, the requests are far from narrowly-tailored, and seek the production of a vast array of documents unrelated to [the defendant]." 2020 WL 3965999, at *3.

### B. The Intel Factors Weigh Heavily Against Granting the Application

Even if the Court finds that the statutory factors are met here it should deny the Application. "[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264. The Supreme Court left the decision to the district courts to "assure an airing adequate to determine what, if any, assistance is appropriate." *Id.* at 266.

To guide District Courts' analysis, the Supreme Court set forth the following factors to consider in ruling on a Section 1782 request: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65. For the reasons set forth below, these factors weigh strongly against granting 277 Ontario's Application.

## C. The Requests Are Unduly Intrusive and Burdensome

The fourth *Intel* factor weighs heavily against granting the Application. "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (quoting *Matter of Application of O2CNI Co., Ltd.*, No. C 13-80125 CRB (LB), 2013 WL 5826730, at *12 (N.D. Cal. Oct. 29, 2013) ("The court may consider whether the section 1782 request is a 'fishing expedition' or a vehicle for harassment.'")).

As explained above, the documents sought are directly pointed towards competitors of Affinitas in the payment processing industry. The proposed subpoenas may result in Affinitas obtaining documents or information that could give it a competitive edge over those other parties.

If this Court grants the Application, then Respondents may need to produce documents that contain business plans, pricing, models, notes, strategies, and other communications from persons and entities in direct and/or indirect competition with Affinitas. For example, numerous document requests ask for correspondence and other business records involving not only Morgan, but persons and entities named Blade Payments, Baazel Max Advertising, Elevation Management, ND Group LLC, Roberge Oil Markings, Tricia Edwards, Michael A. Harris, Karan Talwar, Khera Investment Solutions Ltd. Even as to the payment processors who were allegedly involved in processing of the merchant funds at issue, the requests are not limited to the merchant accounts involved in the lawsuit. Documents and communications related to all other unrelated business Respondents conducted with those companies and individuals would be responsive to the requests, even if they are completely irrelevant to the claims in the Canadian litigation.

To place these parties in a situation where they are giving Affinitas a competitive edge over them would be improper and contrary to the purpose of

Section 1782. In his dissent to the *Intel* decision, Justice Breyer addressed this very issue: "The Federal Rules of Civil Procedure, for example, make only limited provisions for nonlitigants to obtain certain discovery. *See* Fed. R. Civ. P. 27. **The limitations contained in the Rules help to avoid discovery battles launched by firms simply seeking information from competitors.** Where there is benefit in permitting such discovery, and the benefit outweighs the cost of allowing it, one would expect either domestic law or foreign law to authorize it. If . . . there is some special need for the discovery in a particular instance, one would expect to find foreign governmental or intergovernmental authorities making the case for that need. Where *none* of these circumstances is present, **what benefit could offset the obvious costs to the competitor and to our courts? I cannot think of any**." *Intel Corp.,* 542 U.S. at 270 (emphasis added).

### D. The Requests Implicate Serious Confidentiality Concerns

277 Ontario's requests also implicate serious concerns regarding confidentiality. There is no indication of any protective order in place in the Canadian litigation,[3] and 277 Ontario has made its sweeping requests without regard for the confidentiality of Respondents' information, or the third-party confidentiality of the parties with whom Respondents have contracted. *See Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 623-24 (8th Cir. 2016) (district court did not abuse its discretion in denying Section 1782 application for discovery where the discovery was highly sensitive, confidential trade secret information that may not be sufficiently protected in the German action).

---

[3] On July 12, 2021, Respondents' counsel asked counsel for 277 Ontario whether any protective order had been entered in the underlying Canadian action. 277 Ontario's counsel provided the following vague response: "The court in the Canadian action has entered a number of orders, one or more of which could broadly be viewed, at least in part, as protective in nature." Respondents' counsel requested opposing counsel to provide a copy of any protective orders entered, but opposing counsel declined to do so, stating "we don't want to be in a position of determining what would be the appropriate order(s) to send over from the Canadian action that matches your request." This email exchange is attached as Exhibit 2.

As noted above, 277 Ontario acknowledges in its own complaint that the identity of the banks used by payment processors and their arrangements are typically confidential and "part of the payment processor/ paymasters' marketplace added value." ECF No. 1-4, ¶ 18. 277 Ontario further acknowledges that at least one of the processing companies centrally involved in the dispute (New Line Processing, a party with whom Affinitas did business, unlike Respondents) refused to produce its contracts or communications citing confidentiality obligations. *Id.* at ¶ 89. If the Application were granted, Respondents would be forced to produced confidential information with no satisfactory guarantee that it will be protected from disclosure.

### E. The Material Sought Is Not Outside the Reach of the Canadian Court

277 Ontario does not adequately explain how the information is unavailble through other means, especially given that it can seek discovery from the actual party who took the money, *i.e.*, Morgan. As the Supreme Court has stated, "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can order them to produce evidence." *Intel*, 542 U.S. at 264. By contrast, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

Here, Morgan, the other defendants, and the relevant banks have already provided 277 Ontario with a substantial amount of information and records relating to tracing the merchant funds at issue. Morgan and the other parties with whom Affinitas contracted who were responsible for the merchant funds at issue are in a better position than Respondents to explain to the Canadian Court their relationships and the movements of the funds. 277 Ontario does not explain why it should be

allowed to seek duplicative discovery from Respondents, who are non-parties, even if the requests were relevant and proportionate (which they are not). Accordingly, this factor weighs against granting the Application. *See In re Ex Parte Apple Inc.*, Civil No. 15cv1780 BAS(RBB), 2015 WL 5838606, at *4 (S.D. Cal. Oct. 7, 2015) (weighing first discretionary factor against applicant where applicant "has not shown that it cannot obtain this information" from "a party to the foreign litigation"); *In re Ex Parte LG Electronics Deutschland GmbH*, No. 12cv1197-LAB (MDD), 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012) ("Although § 1782 does not have an 'exhaustion' requirement, the Court is permitted, in deciding how to exercise its discretion, to consider whether the applicant has availed itself of discovery procedures in the foreign forum.").

277 Ontario makes a bare assertion that, as of the date the Application was filed, Morgan has failed to provide some unspecified information and documents that he was ordered to produce by the Canadian court, but 277 Ontario includes neither the relevant order nor any information about what material was withheld or why. If Morgan has in fact withheld material without justification in violation of a court order, then 277 Ontario should seek appropriate relief with the Canadian court to enforce compliance with its order. If, on the other hand, however, Morgan has objected to producing certain information based on confidentiality or other valid grounds, it would be inappropriate for 277 Ontario to use Section 1782 "to circumvent the proof-gathering restrictions" of the Canadian court. *See Intel*, 542 U.S. at 264.

/ / /
/ / /
/ / /
/ / /
/ / /

12
OPPOSITION TO APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782

## IV. CONCLUSION

For all the foregoing reasons, the Court should deny the Application.

DATED: July 22, 2021  **ROME & ASSOCIATES, A.P.C.**

By:    */s/ Brianna Dahlberg*
        Eugene Rome
        Brianna Dahlberg
Attorneys for Respondents EMBLAZE ONE INC. and JASPREET MATHUR